Good afternoon, everyone, and thank you for coming at this somewhat unusual hour for our hearing of the Court. We're usually here at 10 a.m., but we appreciate, given the rescheduling, that you were able to find a good date and time that works for all of us. I understand that we are all present, considering there is only one case, and that way we can dispense with the reading of the calendar. And so why don't we begin? I understand we have Mr. Sullivan for the appellant, and that you would like to reserve three minutes for rebuttal. Is that right? That's correct, Your Honor. And it's clear that you've heard that under our Court's protocols, if you would like, you may feel free to remove your mask when you're standing at the podium. If you would prefer to keep your mask on, that's also fine. It's up to whoever is speaking your choice. So, Mr. Sullivan, please proceed. Thank you, Your Honor. I would like to start, if I might, with a vacatur appeal and just ask Your Honor's indulgence to consider for a few minutes what happened here from the perspective of the general public, whose confidence in the judiciary it is the goal of Section 455A to protect. Judge Ramos ruled for Mobile when he had a direct financial interest in the company. While his rulings were on appeal, the Wall Street Journal launched an investigation into SDNY then sent the parties essentially a form letter mirroring the letter sent in courts around the country, disclosing the conflict and stating that, not to worry, the conflict had no impact on the decision. We then moved to vacate. The Wall Street Journal published its investigation with Judge Ramos' conflict in this case as the lead profile in the article. Nationwide press coverage ensued. Congress got involved, and the issue became a focus of the judiciary, starting with the Chief Justice of the United States. Meanwhile, the district court, now Judge Viscoso, held that the error was harmless because she looked at Judge Ramos' decision and she agreed with it. What is the reasonable but skeptical public to think in a situation like this? Obviously, any case where there is a direct financial interest... You disagree with it. Didn't she say that she did a de novo review and would have reached all of the same conclusions? No, I don't think she did say that, Your Honor. I think what she said, in fact, was she did two things. First, she cited the Lillieburg case for the proposition that there was a conflict here, but then did not, then turned in a new paragraph to the remedy, and then based on, we think, a misreading of this Court's footnote 10 in the Faulkner decision, said that although she thought that the error could not be harmless, in fact, it was harmless, and then she anchored her analysis around Judge Ramos' original decision. So, in other So, if she had, in fact, said, I've looked at this afresh, based on the record, and I would have reached the same conclusions, and therefore, I conclude that it should come out the same way, would that be sufficient? I think she should have done, frankly, Your Honor, what the District Court did in the Driscoll case, which we cited, right? So, there the Court granted the motion to vacate, then said, I'm going to hear the issue afresh, without giving any deference to the original decision, you know, give the parties an opportunity to do supplemental briefs, something like that to ensure, from the perspective of both the parties and the public, that we really did get a fresh look from an unconflicted judge. Can I just ask, was there anything in the District Court that you wished you had a chance to brief before Judge Viscoso, but you did not have an opportunity to brief? Well, I do think, Your Honor, that just in the nature of things, right, we've now been with the merits issues, and refined our arguments on appeal, as litigants usually do, so I think it would have been, it would have made sense for the District Court, I would think the District Court would have wanted to hear from the parties on supplemental briefs. I'm asking in terms of the merits, re-argue the merits before? In terms of the merits, Your Honor, yes, you know, once the decision was vacated, then we would have had an opportunity to address the merits fresh. Can I ask you what your requested remedy would be in either of two circumstances? And let me posit these two, there may be other situations, I don't want you to speak to them, just the two. Let's say, hypothetically, we look at the merits here. We dig into the merits, and we determine, as a matter of law, that the decision of the District Court Judge Viscoso was correct. That this is not an issue in which there would be any requirement for fact finding, or anything like that. It is simply a question of contractual interpretation to be done by law. And we, through our own de novo review, reach the same conclusion. Okay, that's scenario one. Scenario two is we do the same thing, but we agree with you on the merits, okay? What is your suggested remedy in each of those two situations, for you? Well, I think, Your Honor, that our view, of course, is that the court should start with the vacanter issue. Right, yeah, yeah, stick with my hypothetical. I understand, you can come back to that. But just stick, assuming that we were to reach the merits and determine that this is a decision that can be made as a matter of law, de novo. That there's absolutely no room for, say, fact finding. In one scenario, we think one side is right. In the other scenario, we think the other side is right. Do you think in either circumstance, we should be vacating the district court and just sending it back? Or would you say that if we were to agree with you, we would just rule in your favor and that's fine? Right, yeah, so I think that if you were to proceed to the merits in that way, Your Honor. Obviously, depending upon the nature of your ruling, if we got all the relief that we're seeking on the merits, we might not have standing to pursue the appeal any farther. But that doesn't change what I think the right remedy should be, which is a vacanter here. Okay, that's what I'm asking, is the remedy you're asking for. I'm not saying hypothetically, if you were to win against your desires, would you then petition for cert and say, no, no, the court gave me too much. My question is, what is the remedy you're seeking? And is it, no matter what we think of the merits, that you think the proper remedy here is simply vacater? Yes, Your Honor, yes. And in that case, if it were vacater, would you be asking for remand to a different district judge, or would it be within our discretion or appropriate to remand a matter to Judge Viscoso in your view? Well, it would certainly be within your discretion, as you indicated. From our perspective, we don't think that Judge Viscoso, we have no reason to believe that Judge Viscoso would not follow this court's instruction on remand to truly give the issue a fresh look. We did propose in our reply brief the possibility of giving it to a new judge, which was really in response to Mogles' expressed concern that she'd already made up her mind, and so therefore it would be meaningless to remand it to her. And if the court shares that concern, it has the discretion to do that, but in the first instance, we're not asking for that, Your Honor. And that's why we didn't ask for it in our opening brief. Her review was presumably based on the merits briefs that had already been filed, with no supplemental briefing, correct? That's correct. All she had was the original merits briefing. That's correct, Your Honor. Was there anything that you would have added had you been, had she asked for a remand, that you would have basically made the same arguments that you were making? Well, I think we would have, because one, not only has time passed, but we now have to deal with Judge Ramos' decision. And that's one of the fundamental problems here to your question, Judge Monashi, is that she anchored her analysis around that decision without even having, say, for example, the merits briefs that we submitted here. She said it in Lilliburg, right? That there was a disqualifying conflict. Did she not understand, had it not been presented to her in any letters or anything of that sort, what the Lilliburg test was? Well, we argued the Lilliburg test, Your Honor, but, and so she didn't apply the Lilliburg test. That's why it's a legal error from, you know, so yes, that was before her. She should have applied it, and we think that properly applied. I mean, like in Lilliburg, the Supreme Court says it's appropriate to consider these factors. Is it like a test that's mandatory in every case when you're considering whether there's harm from a conflict? I do think so, Your Honor, yes. The court says that those are the factors it's appropriate to consider, and all the other cases that we found, you know, whether they vacated or not, have applied that test. In fact, there's no case that we're aware of or that Mobile has cited to the court where a court said, especially in the face of a conflict here. There's no fact finding that occurs to apply that test, right? It's a legal determination, right? That's correct. So, can we apply that test on appeal? You're referring to the Lilliburg test? Yeah. Yes, Your Honor, in fact, that's what we're asking the court to do, is to apply the Lilliburg test and find that Judge Ramos' decision should have been vacated, and we think that. So, if we can apply the test on appeal, that would cure the problem that you're saying that the district court, that Judge Viscoso should have applied it? Well, no, I think it's two different things, Your Honor. If you get a novel review and you have an application of a test that you're seeking to apply, why wouldn't that make the error harmless? So, I think there are two different things that we're talking about, Your Honor. There's applying the Lilliburg test to determine whether or not the motion to vacate should have been granted. We are asking the court to apply that test, and under that test, we think it was required to vacate the decision, and therefore, it should be sent back. That's because she didn't follow it. That's because she didn't follow it. The argument is that she didn't follow it. Well, the argument is that she didn't follow it, and that properly followed, it has to lead to vacature. This is not a case where, and I want to go back to the other half of your question, Judge Monash, but just to be clear, this is not a case where the merits were obviously on one side, as was apparently the situation in this court's decision in Brock, which, Judge Monash, I know you were on that panel. It's not a case where the conflict was attenuated for some reason. For example, where there were two defendants, and the judge had an interest in one of the defendants and not the other, and the decisions had to do with the party in which the judge did not have the interest. It's not a case where the party challenging vacature did not appeal, as is the case in the public administration. But none of those things are part of the test. The test just says you need to consider the risk of injustice to the parties in the case, or that other parties will be denied relief, or that there's a problem with the public. I mean, those are factors that one can consider. That doesn't say it has to be that the merits are clearly on one side, or that no party appealed. No, you're on the fact. I think that, I mean, from our perspective, when you have a direct financial conflict like this one, and it's not attenuated by time or some other factor, vacature is most likely the right answer. But I'm just noting that there are a couple of district court cases that- Well, can I ask you this question, so if in fact there was, so this is not a case like some of the other cases where there was a whole conduct of a trial over which the conflicted judge presided. It's a case where the conflicted judge entered some legal determinations, which obviously were important. But then, in order to address the conflict, it went to another district judge who reviewed those legal determinations. It seems to me de novo, but you can tell me if you think, I mean, you say that she might have been anchored by the opinion. But there was no fact finding that restricted her decision making. So another district judge reviews it de novo and determines that those legal determinations were correct. And so if we have confidence in that decision, why wouldn't it be the case that there isn't a large risk of prejudice to the parties? It can't be the rule that every time a judge issues a decision as a matter of law, whether it's motion to dismiss or summary judgment, contract interpretation, statutory construction, that it's okay if the judge is conflicted as long as there's going to be an appeal, which of course there always will be. The test is about- The question isn't, is it okay? I think it would be clear it's not okay. The question is, what do we now do about it? because now the case has landed before us. We have briefing on the issue, and the standard is de novo. Regardless of whether you think that Judge Vesposal gave or did not give deference, it is clear that we don't give deference to anybody. We, the three of us here, look at the legal issues afresh, and we figure it out for ourselves. We don't anchor ourselves on anyone. And even when we say things in our opinions, like we affirm the district court's decision, we affirm its legal conclusions. One might say that we're anchoring ourselves in the decision, but I don't think anyone would suggest that we're not engaging in the de novo review that we claim to be engaging in. Right, so you're honest to see my red light is on. And may I- I have a few more questions, so I think we're going to keep you up a little bit. Good, and if I could ask the court's indulgence for a few minutes to address the merits as well at the end of this piece. I was going to get to that. So I don't know if you had some last response to what I just said. Yes, I did, yes. Because I was going to ask you to spend a little bit on the merits. Okay, good. Yeah, so I guess I have a couple of responses to that, Your Honor. I mean, it is, there is no circuit court has held that the fact of appellate de novo review means that you've cured or obviated the conflict. In fact, two circuits have rejected that very proposition, the Federal Circuit and the Tenth Circuit. None has endorsed it. And this court, I respectfully submit, should not be the first. And the reason is because it's about more than just the interest of the parties. It's about the public's interest, the public's confidence in decision makers up and down the line, from the first one to the last one, who are beyond any hint of partiality. That's the interest that the Supreme Court is trying to protect in Lillieberg. And that's the interest, that's the- In this case, we don't have just de novo review by the Court of Appeals, although you have that. But you also have de novo review by another district judge, don't you? No, I don't think we did have de novo review by de novo. So what did you get from Judge Viscasol? I think she did a review of Judge Ramos' decision and decided whether or not she agreed with it and did it without even having an opportunity to comment on it. Right, I mean- When you say you didn't have an opportunity, were you denied an opportunity? Did you ask to submit? I mean, I look at the docket and I haven't pulled each of these items. But it seems to me that there were a series of memoranda that were submitted to her. And that you, well, you tell me, was there any limitation placed on the types of arguments or legal issues that you were allowed to argue in the various memoranda that you did submit to her? So we moved to vacate, Your Honor. So the relief we sought was vacate the decision and give us an opportunity to start afresh. That's what we asked for and we were denied that. But is that basically put all your eggs in one basket, right? And it can be, well, I mean, you can posit any number of reasons why you might seek relief from a court in any instance, right? You could say, procedurally I win and on the merits I win. And if you only launch a procedural attack, then you're sort of at your own peril, not having also supplemented your merits attack, right? I don't think so, Your Honor, no. I think that, so a few things. One is, when we moved to vacate, right, we had a final judgment from Judge Ramos. I don't think it would have made any sense that we could have just filed a free-floating supplemental brief for seeking reconsideration. I don't know how we could have done it. I don't know what the procedural device would have been. The procedural device was the one we invoked, which was vacate the decision. But if the problem is that Judge Ramos entered a decision where he was conflicted, isn't the remedy for that to have a judge who's not conflicted examine that question again? Why is there an entitlement to file some supplemental brief to supplement your merits arguments? Why isn't the remedy appropriately just to have another district judge look at the case as it was presented to Judge Ramos? Because that's not what she did. She looked at the case with Judge Ramos' decision in front of her. That makes a difference. So is it your position that she should not have read Judge Ramos' opinion? Well, I think- And really started it afresh, as if it were being presented to the first court for the first time. Is that what your position is? I think she would have had a couple of options, Your Honor. That is one of them. I think another option, she could have said, well, Judge Ramos' decision is out there. Right, I can't not see it. So at a minimum, I'm going to give the parties an opportunity to submit supplemental briefs on it. That's what the district court did in the Driscoll case in the Southern District of California, which we cite. So that's what the court should have done here. And then we wouldn't be here on this- Your position is that Judge Ramos got it wrong on the merits? Yes, yes. And are you saying that she should have just asked for a briefing on that? In other words, treat it as if it were an R&R or something from the magistrate judge. And so the parties could then comment on that. I think, as I say, Your Honor, that's one option. I mean, I think she could have done it a couple of different ways, but what she should not have done is what she did. Is it your position that reviewing it simply, whatever she did, as far as Ramos' opinion was concerned, and determining that the error was harmless, that that really only goes to the first Lilleberg factor, but not the other two? Yes, Your Honor. But what about her opinion? She did refer, did she not, to this is an affront to the public as well? She said that. Well, yes, what she said was, and it's a sort of strange couple of sentences to be candid. She said that it impacts the public's confidence in the judiciary when there's a direct financial conflict, and that's never harmless. And then she turned around and said, but I can deny the motion to vacate if I think it's harmless. So I think there's just a false step in the analysis there. And- She didn't take into account future cases? She didn't take into account future cases, and she didn't weigh the gravity of the conflict against the one factor that she did consider, the risk of injustice to the parties. Well, it's pretty clear, at least to me, that the issue here, maybe because of a Wall Street Journal article, maybe because of the great interest the Chief Justice has taken in the case, and also the fact that Congress has now introduced legislation to correct, in their view, to further improve the, if you will, the oversight from their perspective, not from our perspective, I don't think, because Congress may be crossing a separation of powers line. But leaving that aside, the interest that has been generated here would, it seems to me, may be called for something other than just, well, she reviewed it and found it was okay, she would have come out the same way. That somehow there needs to be some recognition of the gravity of this, just in terms of the perception of what we do with cases of this sort. I think that's absolutely right, Your Honor, and that is what, again, the district court in Driscoll recognized. This isn't just a sort of a one-off case. This is part of, and again, this particular case was the lead article profiled in this nationwide investigation. Why wouldn't it be the case that if you have a situation where there's a conflicted judge who enters a decision, then it goes to a second judge who's not conflicted to review that decision and enter an order whether to vacate it or not. That that also is a deterrent to future cases and helps preserve public confidence in judicial proceedings. Why wouldn't that be sufficient? So what about this process undermines the public confidence in judicial proceedings? So I think it's what I've said earlier, Your Honor, which is what we asked for was for the original decision to be vacated and for it to be decided afresh by a new judge, in this case it would have been Judge Viscoso. That's what we asked for, but in our view, that's not what we got. So I think if what you're saying is, by one way or another, the judge makes- I mean, would it have been very different instead of saying, I would have reached the same conclusions that Judge Ramos did if she had vacated Judge Ramos' orders and entered the same orders? Would that have been very different? Well, I think that even that, I mean, looking at it from the perspective of the public, which the Supreme Court in Lilyburg made clear is what we are supposed to do. It talked about the public, the general public, being all too willing to indulge suspicions about the bench. So I think that it's, I recognize, Your Honor, that what we are proposing is not the most efficient route, but I think it's a cleansing route. And, you know, it's- Yeah, but what is a cleanse? I'm asking, if we're confident that she would have entered the same decision, if we look at her opinion and it amounts to her saying, even if I were vacating his orders, I would enter the same orders, why is that not enough? Why does she actually have to do that? Again, I think that she, I think that it was a sort of ersatz review of his decision without her having had an opportunity to comment on it. So again, I think that there were a number of things that she could have done. So the defect is not actually the vacater, because if she says, I would have entered the same orders anyway, it amounts to the same thing as entering the same orders. Your objection is that you didn't get to comment on Judge Ramos' opinion. Is that right? I think it's both, Your Honor. I do think that, again, my friends on the other side agree that the predominant labor factor is the risk to public confidence and judicial integrity. And I do think it's important- So we're in the realm, not so much of misconduct and correcting misconduct as dealing with appearances. I think that's what Section 455A is trained on by its text, the appearance of partiality. And so- So can I ask, what are the implications of a vacater? Would you also vacate the order by Judge Ramos ordering arbitration and we'd have to have a whole other arbitration proceeding? I wouldn't go that far, Your Honor. I think that, I mean, look, from our perspective- So which orders would be vacated and what would have to happen? So, from our perspective, there should not have been an arbitration in the first place, obviously. And we think that that order should be vacated if it went back and the court ultimately said, no, I've taken a fresh look and, Tig, you're wrong. The arbitration was properly compelled. I don't think we would be saying that we have to redo the whole arbitration. It's about the orders that Judge Ramos made. You mentioned that you wanted to talk about the merits. Yes, Your Honor, I do. And I guess that's endorsement number 11? Yes, Your Honor. You want to talk about it? Yes. And why that doesn't compel arbitration, I guess is what you're pointing to. Yes, Your Honor, I want to address that and hopefully get to the prejudged interest question if I could. So the parties negotiated a unique, very specific ADR provision here, Your Honor. It's set forth in our opening brief at page seven if you want to refer to it. It is not a mandatory conventional arbitration clause, which the parties had and consciously replaced. So here's how it works. If the parties have a dispute that they can't resolve in good faith, then either one can request that they settle the dispute by using an ADR process chosen according to the endorsements of procedures. If the other party does not agree to that, then that's it. You go to litigation. If the other party does agree, then two things happen. First, the statute of limitations is told because under paragraph seven, the agreement to use the ADR's endorsement selection procedures is the legally significant event. And then the parties start on the steps. But it doesn't actually say that, right? So it says that one party can request arbitration if the company and the insured agree to so proceed, and let's say you're right. It means if they agree to proceed by arbitration, they'll jointly select an ADR process. That can be one of the options that's in paragraph three. But then paragraph four says if the parties cannot agree on an ADR process within 90 days of the written request described in paragraph one, the parties shall use binding arbitration. So why does it matter what paragraph two says? So why couldn't one conclude that if one party wants arbitration, the other one doesn't want any ADR process at all, then they haven't agreed within 90 days on an ADR process, and therefore, the parties shall use binding arbitration. Yeah, so a couple points there. I think that, just to take a step back, the if clause in paragraph two, right? That's the language of express a condition under New York law. That express condition has to have meaning. Our interpretation gives it meaning. Mobile's interpretation does not. So that's sort of primary point. It's contract 101, right? If an interpretation reads a provision out of the contract as theirs does and district court's interpretation does, it's wrong. With respect to your question about paragraph four. I mean, you could imagine a provision that says, even if you don't agree to so proceed, you must jointly select an ADR process. It's enforced them to jointly do it. It says you're going to have an agreement if you're going to jointly select a process if you agree to so proceed. Otherwise, there's a default. Right. So why does that read it out of the contract? It just says the express condition applies to paragraph two, not to paragraph four. So this paragraph four has its own condition, which is if the parties cannot agree on an ADR process within 90 days. Right, and I want to get to that too, Your Honor. So I think you're referring to Mobile's argument that, no, the express condition in paragraph two does have meaning, because otherwise, the joint choice of an ADR process would be a mandatory obligation to agree, and that's impossible. And that would have all sorts of problems. You're drawing a distinction between whether or not you agree to have an ADR process as to pursue an ADR process. And if you don't agree to that, then it ends. If you do agree to that, then it's a question of which process. Is that your point? If you do- That's how four kicks in? That's how you get on the train, Your Honor, yes. So the first thing that happens is the parties jointly choose an ADR process. If they cannot, which is the next thing I was going to say in response to your question, Judge Bonasci. Section four tells you exactly what happens, which is why Mobile's response to the need to give the express condition meaning fails. The contract tells you exactly what happens if the parties cannot, the word is cannot, agree on an ADR process under section two. It defaults to arbitration. Right, but if you have a situation where one party wants an ADR process, or sorry, let's say one party, yeah. One party wants an ADR process, the other party wants to go to litigation. Then you have a situation where the parties cannot agree on an ADR process within 90 days of the written request described in paragraph one, don't you? No, you don't, because the parties have- Right, so if I'm the company, I say I want arbitration, and I want this particular process. And then say the insured says no, I want to go to litigation. Have the parties agreed on an ADR process? They have not tried to agree on an ADR process. But who doesn't say if the parties try and fail to agree on an ADR process? It just says if the parties cannot agree on an ADR process within 90 days. Right, if the parties cannot agree, it says if the parties cannot agree. It does not say if the parties do not agree, which is the way that Mobile writes it in its brief. Those are two different things. By saying if the parties cannot agree on an ADR process, it's assuming that- I'm sorry, what's the difference between do not and cannot? Because by saying if the parties cannot agree, cannot agree on an ADR process, it assumes that they have tried as provided for in section, in paragraph two. I mean, I don't know that there's ever a world in which they cannot, right? I mean, it's possible. I mean, if we're saying can, I mean, of course, there's possible. One of them could just change their mind. I don't understand the distinction. I understand, I think, your primary point, which is that you're saying this is a two-step process. That paragraph one is, you would like to opt into some kind of ADR world, the form of which is indeterminate. And then in paragraphs two, or whatever it is, two, three, and four. You're talking about what will that world look like? And as long as you opt into the world of ADR, then you will get, you will trigger the subsequent paragraphs about what form it will take. And the default will be, if you both want to be in the world, but you can't agree on its form, then you will have these default processes that just shove you into a binding arbitration world instead of a mediation world. I understand that argument. But I guess I don't understand this cannot as opposed to do not distinction. Well, I'm trying to pick up, Your Honor, what I think you just said, which is that the way that paragraph four is worded is consistent with our interpretation. Because it assumes you're in that world. It assumes that you've gotten on the train of using an ADR process of some kind. And then you may or may not be able to agree on an ADR process. And if you can't, then the contract tells you what you have to do. And I do want to come back to the point- It's effectively saying, if the parties agree on an ADR process, but can't agree on a specific procedure within 90 days. But if it said do not, it would mean regardless of whether they agree on having an ADR process or not. No, I think you would still have all of the other arguments that we've made, Your Honor, with respect to paragraph two. I mean, the rule of the last antecedent, the ordinary meaning of the word. So the fact that they expressed- Yeah, but what I'm saying is I don't care. So let's say I agree with your interpretation of the last antecedent. Let's say paragraph two does in fact mean, if the company and the insured agree to proceed by binding arbitration, they will jointly select an ADR process for settlement of any dispute. Fine. Let's say it means that. Once you get to paragraph four, all paragraph four says, if the parties cannot agree on an ADR process within 90 days of the written request described in paragraph one. If one party wants ADR and the other party does not, it seems to me the parties cannot agree on an ADR process within 90 days. I see. Yeah, so a few, I guess, two points of response, Your Honor. First of all, just as a matter of contractual context, right, the parties had a conventional mandatory arbitration clause. What that interpretation would mean is that that's what they, that all these steps in the sequences- Well, do we know the reason why it got rid of the conventional mandatory arbitration clause? So the conventional clause that was there before you adopted the endorsement also settled arbitrations under English law, right? Like under the English Arbitration Act. Maybe the reason they adopted this and not that is because they wanted to do it under New York law and not under English law. So why should I read into the fact that you adopted a different clause to mean you necessarily wanted voluntary arbitration as opposed to mandatory arbitration? Well, I think if all the parties wanted to do, Your Honor- Well, the strongest evidence we have in the record, Your Honor, is that they didn't just replace the English Arbitration Act with the FAA or replace London with New York. They replaced the entire clause when they had what Mobile says the endorsement 11 does, which is provide for mandatory arbitration. They must have meant something different. And putting in all these steps, you know, the sequences from paragraph 2 through 4 has to mean something. Because, you know, the parties can always agree on another ADR process, even if they have a mandatory arbitration provision, right? So- But does English law default to binding arbitration? The original ADR, the original arbitration clause, Your Honor, specifically said the parties shall use arbitration. So that's- Well, yeah, but pursuant to the English Arbitration Act. I don't know what the English Arbitration Act says. I think that, Justice, Your Honor, defines the procedures under which the arbitration would happen. And it's akin to the FAA, right? So which determines when you confirm an award, when you can compel arbitration. Yeah, how you pick your arbitrator, that kind of thing. So it's not about whether or not you go to arbitration. It's just about the procedures that apply. But I think, as Judge Manasci points out, there's more than one thing that was changed in switching from that clause to this clause. And we don't know. And as I recall, I'm trying to look, wasn't there some provision in the contract that says thou shalt not look at parole evidence? Right, but that's not parole evidence, Your Honor, because it's part of the contract. If we were to inquire and put people on the stand and say, well, you guys were sitting there at the negotiating table. Tell me why you dropped the English Arbitration Act and went for this, right? We can't peer into the minds of the negotiators, as I recall, right? We're stuck with- That's correct, Your Honor, I understand the question. Right? Yes, that's right. There's a provision that says it shall be interpreted even-handedly. In the case of ambiguity, you just do the best, basically, with the text that you have. So basically, all of our tie breakers are thrown out the window. And would you agree that, well, two things. Number one, is it your position that we, or in your view, a district court, if this were to be remanded to a new district judge, would be obligated to make a decision as to the contractual interpretation that's appropriate as a matter of law? Yes. And not based on some extrinsic set of facts that might be gathered during some hearing? I think that's right, Your Honor. The only reason why I hedge on that a little bit is because I suppose there might be a difference between prole evidence and other extrinsic evidence. But we're not asking for that, and we don't think we need any tie breakers. There's not a tie. You're not asking for any evidence to be looked at. You're arguing that this is really something that can be decided as a matter of law based on the record that exists. I believe it can be decided as a matter of law, Your Honor. I mean, of course, the court may disagree with me about that, but- Can I just ask, why isn't the old arbitration clause prole evidence? Didn't you sign an endorsement that says that the old arbitration clause shall be deleted? Yeah, but the policy still has- So, like, if we're looking at the current contract, shouldn't we give effect to the idea that that old clause is deleted? You give effect both to the new clause that we have, and you give effect to the deletion, because the deletion remains in the policy. In other words, the insurance policy has all of its provisions, and it has the original arbitration clause, and then there's another endorsement that says, okay, we're not going to use that. So, usually, I think if I'm giving effect to a provision that says that a particular clause is deleted, it means that I should read the contract without that clause. But you're saying, actually, I should read the contract as including the clause and also provision saying that it shall be deleted, and therefore, I should take account of the history of that deletion. I think that's exactly what this contract says, Your Honor. It says, you know, it's not a new contract. It says, here's the old arbitration provision. We're going to remove it. We're going to replace it with this. That move has to have meaning, and coming back to the ADR endorsement itself, again, you have to give the if clause, the express condition, precedent meaning. And the other point that I would say, and- Well, I have to give the if clause in Paragraph 4 meaning also, but I take it- Correct. Just to clarify, your position is if Paragraph 4 said, if the parties do not agree on an ADR process within 90 days of the written request described in Paragraph 1, then mobile would have a stronger argument. But you're saying because it says cannot, it implies that there's an antecedent decision about whether to have ADR at all, in addition to the second decision to agree on a specific ADR process. I mean, I think that's an additional clue in our favor, but as I said earlier, Your Honor, I think we have a lot of clues. And, you know, so, yeah, so I think that would be a different case, but I don't think that we need it to say cannot as opposed to do not. And, you know, I want to come back, by the way, one other point- We have kept you up here for quite a long time, and I apologize. I'm going to ask you to spend just one minute, and then we are going to turn to your opposing counsel. Would you just spend no more than a minute on the last argument, which is the prejudgment interest and the cap at 25 million? Yes, Your Honor, I will do my very best, and I'll just say it's my pleasure to be up here, so no apology needed. On the prejudgment interest issue, Your Honor, the endorsement in Paragraph 6 emphatically states, it is expressly agreed, right, that any decision, award, or agreed-upon settlement shall be limited to the policy's liability limits. I think there really are two issues here. The first is whether or not any decision means a judicial decision. I think the answer is absolutely yes. It doesn't say the decision or the arbitrator's decision or a decision. It's any decision. Any means any. With respect to, and I think the mobile has effectively conceded that point by saying, well, this cap applies to consequential damages or damages for bad faith. Well, I assume they don't think that the court could impose those kinds of damages. And by the way, if it were just an anti-consequential damages clause, there is a conventional way to do that. Lots of contracts have a provision that says no consequential damages. So I think just as a textual matter, you can't read any decision not to include a judicial decision, number one. Number two, the question then becomes, to what does the cap, to what kind of monetary award does the cap apply? And all of mobile's decisions, whether it's Amoco Oil or Finger Lakes Bottling or Grubman, all involved a limit on damages in terms, using the word damages. You're actually still reading this de novo, but actually don't you have a stronger argument, which is the arbitration panel interpreted paragraph six as constraining their ability to give an award with prejudgment interest. And so what they said was, well, we've given this amount. We've already reached the cap. We don't think that we could give any more, because the cap applies to the whole award, which includes pre-judgment interest. So the panel seems to have determined that pre-judgment interest wasn't available in the award they give. Doesn't the court have to defer to that? Well, so I do think that that reasoning, which is merits reasoning, not jurisdictional. Yeah, that's right. So I guess that's the point that I'm making. So it seems pretty apparent that the panel was saying, if we had given damages in the amount of $5 million, such that we're far away from the cap, then we could have given pre-judgment interest, right? That's pretty clear. Yes. And so the panel was saying that it constrains us on the merits. We can't exceed it. Exactly. So the district court is bound by what the arbitration panel decides. Maybe the arbitration panel was wrong. Maybe the better reading of paragraph 6 is pre-judgment interest is not included in the term award. But isn't the district court obliged to defer to the interpretation of the arbitration panel? Yeah. So I think that may well be right, Your Honor. In Canada, we didn't make that argument in the district court. So, you know, I do think that that has legs. But I also think that we win on a de novo review, because I think that there's no, as I say, there's no way to read any decision not to mean a judicial decision. And there's no way to read a damages limitation into the cap, such as occurred, you had in other cases. Are there different issues with respect to post-award interest? So the arbitration panel says they can't include pre-judgment interest as part of the award they're giving. And it does seem like the district court would be stepping on the toes of the arbitration panel if it second-guessed that determination. But isn't it a different analysis when you talk about whether there's pre-judgment interest following the award? You mean following the arbitration award? Following the arbitration award. Well, so, yes, I think that that's right. I think, again, that we win on a de novo review in any event. So we haven't stressed that distinction. You know, so, but I think you're right. To the extent that you were, that one thought that you had to defer to the arbitrator's reasoning, which I think is right as an original matter, that would, I suppose, logically apply or sort of practically apply only to the pre-award period. But it wouldn't make any sense to say that the answer should be different from one and the other, because it's the same cap that applies. So it would be kind of a two-headed decision. It's a question of what the award, what do you mean by award? Everything that exists up to the point of the arbitrator's decision, if the award is broad, then it would include the prejudgment. There could be no post-judgment interest by the arbitrator, at least in terms of any number given, because it wasn't post-judgment, nothing is post-judgment yet, right? Right. So that's more easily seen to be maybe something that the district court might do. Well, right, that's why I- But I don't think that that carries necessarily forward to the prejudgment. Right, that's the point that I was trying to make, Your Honor, and so that's why I say there's sort of that practical line. But I think that the reasoning applies the same way. In other words, the reasoning that the arbitrator used to say we don't have the right on the merits under the contract, because of the cap, to award pre-award, pre-judgment interest, is exactly the same logic that would say you don't have the right to award post-award prejudgment interest. Right, so it says, any decision awarded or retold is made as a result of an ADR process. So then the arbitration panel says, okay, the award is relative to the ADR process, it's subject to this cap. Then there's subsequent litigation over that award, and normally, you know, the default rule in New York is pretty strong that prejudgment interest is available when you have that kind of litigation. So why couldn't the district court award prejudgment interest post-award? That can't possibly be something that the arbitration panel had the authority to do, because it arises from events that happened after they entered their award. So all of the logic about deferring to the arbitration panel wouldn't apply to what the district court is doing after the arbitration panel has entered its award. Because any decision means a judicial decision, among other decisions. So I think what we'll do is, why don't we turn to counsel for the other side. Thank you very much. I thank you, Your Honor. We've reserved three minutes. We've gone considerably over that right now. But why don't we hear from Mr. Brown, and don't be surprised if we go a little bit beyond the 15 minutes. If you haven't already figured that out. I've figured some things out, but not everything. Thank you. May it please the court, Donald Brown, Covington & Burling here for the appellee, Exxon Mobil Oil Corporation. In my prepared remarks, my opening line was I'd like to spend a minute or two on vacater, and then talk about the merits for the rest of my time. So I'll start with those remarks and see where I go. I and Exxon Mobil do recognize the appearance of partiality created by the fact that Judge Ramos owned stock at the time he ruled in our favor, even though he didn't know it. And we recognize and have concern that the Wall Street Journal publicity has increased the risk that people in the public will question his partiality, and therefore there would be some undermining of public confidence in the judiciary, the third Bloomberg factor. But that publicity that your honor focused on has been extraordinary. All the way to the Chief Justice of the Supreme Court. And it's shined a very bright light on this problem. It's shined a bright light on Judge Ramos, bless his soul. It's shined a bright light on the overall problem in the federal judiciary. It has had, this publicity, a pronounced educative effect, to use a word used by the Third Circuit in the In Re Asbestos case we cited. It has given heightened attention to this issue, as your honor pointed out, in Congress as well. And indeed the legislation you mentioned passed on April 27th. There is other pending legislation, but the Courthouse Ethics and Transparency Act passed Congress on April 27th. So in terms of reassuring the public, this isn't going to happen again. We've seen more done here than I've ever seen in my career. That's background. That doesn't answer the question. I think most important here, as has been noted, the two single issues on the merits appeal are both pure issues of law. Involving no fact finding, not needing any fact finding if it went back, as has been pointed out. And this court is poised to give the insurance company an unquestionably fair, unbiased, unconflicted decision on the merits, deciding things anew, de novo, de novo, which means by definition, without deference to the district court, and effectively mooting and rendering harmless. So I understand that we have a de novo review on appeal. I guess when Mr. Sullivan was speaking, I suggested that Judge Viscoso reviewed Judge Ramos' decision, de novo. And he said it did not seem to be exactly de novo because she was anchored by Judge Ramos' decision. So can you just tell me the level of review that you think Judge Viscoso gave to the Ramos' opinion? Sure, I would say that Mr. Sullivan's statement is self-serving, and I would add to that, so are many of mine. But if you read her opinion, which is, if I recall correctly, is an eight-page, single-spaced opinion. She said, in her opinion, that she has read the motions, she has read the pleadings we petitioned to compel arbitration, she read all the related papers. She didn't say anything like, I read Judge Ramos' two opinions in the judgment and worked backwards. She recited what she read, just as the two judges who addressed this in the wake of the Wall Street Journal issue did. Just as the judge in the Driscoll case is doing. She, in the Southern District of California, gave people leave to file an, quote, optional, up to 15-page brief. Otherwise, she's reviewing everything that was filed before. No, Judge Viscoso didn't say de novo. But she said she looked at everything that had been filed. She did not say, I've read Judge Ramos' opinion, and he was right, end of case. She read everything and ruled anew. Her opinion is pretty much as long as his was, and it is a de novo review. Did she fully consider the Lillbert factors? Or considerations, or whatever you want to call them? Yes, is my answer. Both sides- She considered, I think, the effect of it on this case. She mentioned the impact this case was having on the public. In fact, she said that that can't be resolved by harmless error, and then she resolved the case by harmless error. She didn't really talk about future cases. I didn't see it as sort of a laid out consideration of Lillbert, as one might have hoped. No, you're right there. You're absolutely correct there. In one way or another, your honor, she mentioned two of the factors. The third factor is, they're all termed in terms of risk. The third factor is a risk of undermining public confidence in the judiciary. She started with that. She started with that, and that makes sense, because Lillbert itself started with that, even though it's the third factor, because that's the driving force behind 455A. So she cited that factor as such. She cited the first factor, which is the risk of injustice to the parties in this particular case. She never mentioned the risk of injustice in other cases. You are right. I wouldn't have mentioned it either, because there isn't any risk. This case has no relationship to any other cases whatsoever. It has no bearing on any other cases whatsoever, so there is no such risk. But I answered your original question, yes, even though all three aren't enumerated there. So is your position that the Lillbert factors is a test that's mandatory whenever you're considering this kind of question, whether to vacate? As I said before, in Lillbert itself, the Supreme Court says it's appropriate to consider these factors as if they just might be something you could consider, like allowing a district court to consider them as an authorization, but not as a mandatory requirement. But other cases, we have treated it as kind of a test. So do you think that it's required to always consider the Lillbert factors as if it's a mandatory test in this kind of a case? The Supreme Court's chosen word, consider, which they used more than once in talking. Well, I mean, in Lillbert, the Supreme Court is considering whether what the district court did was appropriate. And the Supreme Court says it's appropriate for the district court to do what it did, which is consider these factors. I guess in later cases have suggested that it becomes a mandatory thing, but that's not what the Supreme Court said. So I guess I was wondering what your position is on that. No, we've said in our briefs here that we don't think it's mandatory. These are considerations to take into account. I have- And I guess I have another question, which is, you're saying she didn't explicitly lay out the factors. If in fact the district court looked at all of the briefing and considered the case anew, wouldn't that minimize the risk to the parties in this case and to other parties and to the public if we have a process whereby a second district judge reconsiders a case where a conflict was pointed out with the first judge? Yes, yes. And focusing on Lillbert for a second since that's where we started, both sides fully briefed it. Not just they briefed it and we didn't. We fully briefed it, too. Exxon Mobil Oil Corporation fully briefed it. She had it there. She cited it. She cited, she did, two of the considerations. She mooted one of them by deciding he was right and therefore the error was harmless. Faulkner, footnote 10. Not harmless when done, but harmless now that a second judge has given it de novo review. To be clear, it's not our position that a ruling under these circumstances is harmless error just because it's right. It's not. The appearance of partiality has to be of the courts, not of Judge Ramos. There's no going back there. It has to be remedied. And the only- I don't understand what I think you're saying is if this case had come to us on appeal directly after the decision of Judge Ramos, would you have opposed us simply entering a vacator and sending it to a new district judge? Or would you be arguing that we should engage in de novo review and whatever the 455A problem was? The latter. And we'd be arguing that you would render it moot, render it harmless. So you would be asking us to review it then? Yes. You wouldn't be, okay, even if it came to us directly from Judge Ramos? Well, in this case it did come directly to you from Judge Ramos. But I thought your argument is that Judge Escoso looked at it all, so you've had a second case. I mean, obviously, I don't think anyone is taking the position that if one judge looks at something with a conflict, then the whole case ends there and forevermore, right? I think the argument is that does it all have to restart before another district judge? And if so, did it effectively restart and get a do-over before Judge Escoso? And I thought that the gist of it is that you're arguing there was a do-over and the insurance company is arguing there wasn't really a good enough do-over. But you're arguing that you wouldn't even get a do-over in the district court. You're arguing, and I know we don't need to decide this, but you're arguing that it wouldn't be good enough if the case were coming to us in the first instance. We could just decide it and we could purge the team. Yes, because of the nature of this particular case. Wasn't that exactly what was facing the court in the case that Judge Winter wrote on? It was Chase Manhattan Bank. It went up directly on appeal after he recused, the judge was conflicted, refused to recuse himself, went up on appeal, and then they remanded it back for, they vacated the award and sent it back for a redo. There, rather than reaching a conclusion that there was harmless error at the appellate level. No, it's not like that case at all. A, Judge Winter also wrote Faulkner in Faulkner's footnote ten, and this is like that case, not like Chase Manhattan, which I'll get back to in one second. Because the issues on appeal, as in Faulkner, not as in Chase Manhattan, are purely legal issues that can be decided by this court, will be decided by this court to no vote. Well, I mean, we have applied the Lilleberg factors on cases on direct appeal, right? We've said that- Yes. We look at those factors. And so the implication of that is we could come out either way. We could apply the factors and decide that it merits vacater, or we could apply the factors and decide that it doesn't merit vacater, right? Right. So that's a decided question. It is. Even if we got this directly from Judge Ramos, we could have applied the Lilleberg factors. Maybe it's permissive, or maybe it's mandatory, but at the very least we could have done it and decided that it didn't merit vacater. And if we decided that the factors did not require vacater, that would have cured the problem, wouldn't it? Yes. And our front line position on these consolidated appeals is what we're asking the court to do. So I guess, just as a follow up, so then your position here must be that if that would be enough for us to just apply the Lilleberg factors on direct appeal, you have this extra procedure, which is what went before Judge Viscoso, in addition, who considered it anew, right? So it's more than we've said is required in other cases. Yes. Our ask of this court is to do that, that is, review the two legal issues de novo, decide them, and thereby remedy, purge.